**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                          )
WILLIAM HAVENS,              )
                          )
         Plaintiff,      )
                          )
       v.               )      Civil Action No. 10-1859 (ABJ)
                          )
RAY MABUS, Secretary of the Navy;  )
Chairman, Board for Correction of   )
Naval Records,             )
                          )
         Defendant.    )
_____)

## <u>MEMORANDUM OPINION</u>

This case comes before the Court on remand from the U.S. Court of Appeals for the District of Columbia Circuit.  Plaintiff William Havens, a retired Navy Reserve officer who suffers from psoriatic arthritis, was transferred from active duty to non-active duty in 1996 because he had not been promoted in two consecutive years.  In 2002, he was transferred to the retired reserve, because he had been found not physically qualified to perform his duties as a reservist in 2001.  In 2000 and 2002, Havens requested that the Board for Correction of Naval Records ("the Board") correct his military record:  the first time he maintained that he should have been offered early disability retirement in 1996, and the second time he took the position that the Navy was either wrong when it found him fit in 1996 or it was wrong when it found him not physically qualified in 2001 because his condition was the same at both times.  The Board denied plaintiff's two requests for correction and four later requests for reconsideration.

Plaintiff challenged these denials under the Tucker Act in the Court of Federal Claims. That court dismissed his case on the grounds that the statute of limitations under the Tucker Act had run, and the U.S. Court of Appeals for the Federal Circuit affirmed.  Plaintiff then sued in this

Court under the Administrative Procedure Act ("APA"), seeking an order that defendant correct his record to reflect that he should have been medically retired.  On September 26, 2012, the Court dismissed the action on res judicata grounds, given the prior court rulings.  On July 25, 2014, the U.S. Court of Appeals for the D.C. Circuit reversed the dismissal on those grounds.  It ruled that four of plaintiff's requests were time-barred under the APA statute of limitations, and remanded the remaining two for further review.

The two claims remanded to the Court challenge the Board's denial of plaintiff's 2002 request for correction and its denial of his request for reconsideration of that denial.  After the remand, the parties filed cross-motions for summary judgment.  The Court will grant defendant's motion and deny plaintiff's motion because the Court finds that the two Board decisions at issue were not arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence.

## BACKGROUND

Commander Havens is a retired naval officer who served on active duty in the United States Navy Reserve from March 1980 until August 1996.[1]  Certificate of Release or Discharge from Active Duty, Administrative Record [Dkt. # 4] ("AR") 26.  He seeks review under the Administrative Procedure Act, 5 U.S.C. § 702, of the Board's denials of his requests to change his naval record under 10 U.S.C. § 1552.  Am. Compl. [Dkt. # 13] at 1, 16–17.

---

[1]      "Active duty" is "full-time duty in the active military service of the United States." 10 U.S.C. § 101(d)(1).  Military service members in a reserve component may serve on active duty. 10 U.S.C. §§ 10211, 12301(d), 12310, 12314. From February 1986 through August 1996, Havens participated in the Training and Administration of the Reserve ("TAR") program. *See* Am. Compl. at ¶ V; Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. [Dkt. # 33] ("Def.'s Mem.") at 2 n.4.  The program is a form of active reserve duty that involves "organizing, administering, recruiting, instructing, or training" the military's reserve components.  10 U.S.C. § 101(d)(6)(A); *see also* 10 U.S.C. §§ 10211, 12310(b).

## I.        The Governing Statute and Regulations

Pursuant to 10 U.S.C. § 1216, the Secretary of the Navy is responsible for "separating or retiring" service members who are unable "to continue naval service because of physical disability." Instruction 1850.4D, Secretary of the Navy (1998), at 10-1.[2] The Secretary evaluates service members' disabilities through the Navy's Disability Evaluation System. If a physician determines that a service member "is unable to perform full military duty or unlikely to be able to do so within a reasonable period of time," a Medical Evaluation Board ("MEB") evaluates the member and determines if further evaluation is required. *Id*. at 10-2. If so, the MEB refers the service member to an informal Physical Evaluation Board ("PEB"). *Havens v. Mabus*, 759 F.3d 91, 93 (D.C. Cir. 2014).

If the service member is on active duty, the informal PEB determines whether the member is "fit" or "unfit" to continue service. Instruction 1850.4D § 4211a. If the member is on non-active duty status, it determines whether the member is "physically qualified" or "not physically qualified" to continue service. *Id.* § 4221b; *see also* § 2054 (providing that the "Not Physically Qualified (NPQ) For Continued Naval Service" disposition applies "to a reservist when he or she is unable to continue service in the Naval or Marine Corps Reserves because of a non-duty related disease or injury which precludes the member from performing the duties of his or her office, grade, rank, or rating in such a manner as to reasonably fulfill the purpose of his or her reserve employment").

---

2        A Secretary of the Navy Instruction, sometimes abbreviated as "SECNAVINST," refers to Navy regulations that tailor Department of Defense regulations for that branch of the military. *See, e.g.*, *Peoples v. United States*, 87 Fed. Cl. 553, 572 n.17 (Fed. Cl. 2009). Instruction 1850.4D, the governing regulation in this case, was replaced in 2002 by Instruction 1850.4E. *Havens v. Mabus*, 759 F.3d 91, 93 n.1 (D.C. Cir. 2014).

Both standards consider whether a member is able to perform "the duties of his or her office, grade, rank or rating," but the difference between the two inquiries turns upon whether the disabling condition was incurred while the member was on active duty or not. *Compare* Instruction 1850.4D at 1-2, *with* 1850.4D at 2-16; *see also Havens*, 759 F.3d. at 93 n.4. A disability incurred on active duty that prevents a member from performing his or her duties would result in an "unfit" determination, and the member would be entitled to disability retirement benefits. *See* 10 U.S.C. § 1201(a) (providing that to be eligible for disability retirement, a member's physical disability must be "incurred while entitled to basic pay"); *id*. § 1201(b) (requiring a member with less than 20 years' service to have a disability that "was incurred in line of duty").

A disability incurred while on non-active duty status that prevents a member from performing his or her duties as a reservist would lead to a "not physically qualified" finding, and the member would be discharged. *Havens*, 759 F.3d. at 93 (explaining that an informal PEB determines whether an active duty service member is "fit" or "unfit" to continue service, while it determines whether a non-active duty reservist is "physically qualified" or "not physically qualified" to continue service). Accordingly, the member would not be entitled to disability retirement benefits. 10 U.S.C. § 1201(a), (b).

In explaining the term "fit," Navy regulations state that "the mere presence of a diagnosis is not synonymous with a disability. It must be established that the medical disease or condition underlying the diagnosis actually interferes significantly with the member's ability to carry out the duties of his or her office, grade, rank or rating." Instruction 1850.4D § 2032. And in explaining when a service member is entitled to disability retirement benefits, the regulations provide that the definition of "'[w]hile entitled to receive basic pay' . . . shall not be construed to entitle any member not on active duty, who, at the time of separation from active duty was considered Fit to

4

continue naval service, to benefits under 10 U.S.C., Chapter 61, because of an increase in impairment occurring while the member was not entitled to basic pay." *Id.* § 2038b. In other words, a service member deemed "fit" for active duty upon separation from the Navy does not become entitled to disability retirement benefits because his or her condition later worsens while on non-active duty status.

## II.     Plaintiff's Naval Service and Medical History

Plaintiff began his service as an active duty member in March 1980 and spent most of his career performing training and administration for the Navy Reserve. Certificate of Release or Discharge from Active Duty, AR 26. He began experiencing health issues in 1995 while on active duty. Memorandum from M.L. Culver, Dir., Sec'y of Navy Council of Review Boards ("CORB") to Exec. Dir., Board (March 22, 2006) ("CORB First Adv. Op."), AR 97–101 (reporting "persistent painful swollen Left dominant 4th finger DIP" and "Right great toe onycholysis," a two year history of "intergluteal skin rash," as well as fevers and fatigue in late 1995). In February 1996, Dr. Kevin Craig at Treasure Island Naval Base diagnosed plaintiff with psoriatic arthritis. CORB First Adv. Op. at AR 97; Medical Records, Feb. 6, 1996, AR 183–84.

### A.     In 1996, plaintiff was removed from active duty and transferred to non-active duty because he was not promoted for two consecutive years.

In August 1996, six months after plaintiff received Dr. Craig's diagnosis, the Reserve released him from active duty and moved him to non-active reserve duty[3] because he had failed to be promoted twice. *See* 10 U.S.C. § 14506.

---

3      Non-active duty reservists participate in military drills and training during limited times each year, *see Palmer v. United States*, 168 F.3d 1310, 1314 (Fed. Cir. 1999), and may be called upon to perform active duty services in times of war. 10 U.S.C. § 10142.

In September 1996, as part of his separation from the Reserve, plaintiff underwent a physical examination. Medical Examination (Sept. 9, 1996), AR 171–172. The doctor noted that plaintiff was treated for psoriatic arthritis but was "found fit for full duty and qualified for separation/retirement/transfer to Fleet Reserve during retirement physical on 27 Jun 96." *Id.* at 172. And plaintiff described himself at that time as in "good health and in good shape." Letter from W. Dean Pfeiffer, Exec. Dir., Board to William Havens (June 13, 2000) ("First Denial"), AR 154–55, at AR 154. The Reserve released plaintiff from active duty with separation pay and assigned him to non-active reserve duty. Pl.'s Opp. to Def.'s Mot. and Cross-Mot. for Summ. J. [Dkt. # 36-2] ("Pl.'s Opp.") at 8; Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. [Dkt. # 33] ("Def.'s Mem.") at 2; Letter from Dep't of Veterans Affairs to William Havens (Sept. 24, 1997), AR 168–70, at AR 169.[4]

## B. From 1997 to 2000, plaintiff was found "physically qualified" for non-active reserve duty.

From 1997 to early 2000, plaintiff was regularly found to be "physically qualified" for his duties as a non-active duty reservist. *See* Letter of Pl.'s Counsel to Board, June 2, 2005 ("Pl.'s June 2, 2005 Letter"), AR 18–22, at AR 19; *see also* Am. Compl. ¶¶ XXXIV, XLV, LII, LVI (stating that plaintiff was found "physically qualified" in January 1997, January 1998, January 1999, and January 2000).

---

4     On September 24, 1997, plaintiff obtained a disability rating from the Department of Veterans Affairs ("VA") of forty percent. Letter from Dep't of Veterans Affairs to William Havens (Sept. 24, 1997) at AR 168 (finding twenty percent psoriatic arthritis, ten percent psoriasis with onychomyosis and "history of paronchia and staph," and ten percent undiagnosed illness).

This rating "is designed to estimate the extent to which the soldier's disabilities will impair his or her future earning potential." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 86 n.2 (D.D.C. 2014), citing 38 C.F.R. § 4.1. For example, a service member with a fifty percent disabled rating under the VA schedule "would be expected to generate half of his otherwise expected earnings at the time of the designation." *Id.*

The administrative record reflects that during the 2000s, the Navy began to focus more attention on plaintiff's physical qualification for duty, but the reports were not always consistent. In late May or early June of 2000, Havens was placed in a "not physically qualified" status due to his psoriatic arthritis. Memorandum from J.F. Lowder to Commanding Officer, Naval Air Reserve Center San Jose (June 2, 2000) ("Lowder June 2000 Mem."), AR 149; Am. Compl. ¶ LVIII.  A few months later, an October 21, 2000 physical exam recommended "Board Review for 'Psoriatic arthritis' history" and noted "swelling DIP joint Left 4th finger" and "swelling 1st & 2nd toes bilaterally."  CORB First Adv. Op. at AR 98.  A March 11, 2001 report stated that his "arthritis limit[ed] time standing and grasping of heavy objects with left hand," but that the condition "had not required time away from duties for treatment/evaluation/recuperation."  *Id.*  An April 21, 2001 physical exam found plaintiff not physically qualified, but two months later, on June 13, 2001, an informal PEB found him physically qualified for reserve duty.  *Id.*

### C. In 2002, plaintiff was finally determined "not physically qualified" and transferred to the retired reserve.

The next month, on July 7, 2001, Havens's commanding officer J.F. Lowder requested guidance from the Navy's PEB because "Havens contends that his arthritis causes pain, prevents him from standing for moderate periods of time and that he has great difficulty descending stairs." Memorandum from Commanding Officer, Naval Air Reserve Center, San Jose to President, PEB (Jul. 7, 2001), AR 111.  On July 9, 2001, Dr. Mary Nakamura, a rheumatologist, evaluated plaintiff and described his condition as follows:

> [P]soriatic arthritis.  His symptoms began in September 1995.  Since that time he has had a series of symptoms including arthritic complaints in the hands, ankles, feet, and low back.  Until recently, his symptoms were limited and treated with regular doses of NSAIDS.  His low back pain has persisted for four years.  He also cites intermittent recurrent pain and swelling of the joints in the regions described above. . . . Beginning in May 2001, he developed worsening right ankle pain [and] . . . continues to have

7

difficulty with ambulation.  Over the next 6 months . . . [he] should not engage in activities requiring prolonged or rapid ambulation.

CORB First Adv. Op. at AR 99–100.

Thereafter, on July 19, 2001, the informal PEB found plaintiff "not physically qualified" to continue service.  *Id.* at AR 98.  On January 2, 2002, the formal PEB issued its notification of decision, finding plaintiff "not physically qualified" for service, Not. of Decision (Jan. 2, 2002), AR 126, and Havens was notified that he was eligible for transfer to the retired reserve. Memorandum from Commander, Navy Personnel Command to William Havens (Jan. 3, 2002), AR 125.  On March 1, 2002, plaintiff was transferred to the retired reserve.  Am. Compl. ¶ LXXXIV.

### III.    Plaintiff's Administrative Appeals

#### A.    Request #1:  1999 Application to Correct Military Record

In November 1999, while he was still a non-active duty reservist, plaintiff applied to the Board to request that his "separation for twice failure of selection (FOS) to next higher paygrade be reversed" because he should have been offered early disability retirement based on his medical condition.  *See* Memorandum from William Havens to Board (Nov. 11, 1999), AR 162; Application of William Havens (Nov. 29, 1999), AR 167.

On June 13, 2000, the Board denied plaintiff's application.  First Denial, AR 154–55.  It concluded that plaintiff's medical records as of the time of his transfer in 1996 indicated that even though plaintiff was experiencing certain medical conditions upon discharge, they did not render him unfit for duty.  *Id.*  The Board noted that Havens described himself as in "good health and in good shape," and that no medical authority recommended that plaintiff be retained on active duty for further evaluation and treatment by a medical board.  *Id.* at AR 154.  As for plaintiff's forty percent VA disability rating, the Board stated "that the VA assigns disability ratings to conditions

it classifies as 'service connected,' i.e., incurred in, aggravated by, or traceable to a period of military service." *Id.* But "the military departments do not award ratings based on the mere presence of conditions listed in the VA Schedule for Rating Disabilities. The military departments may rate only those considerations which render the service member unfit to perform the duties of his office, grade, rank or rating." *Id.* Because Havens's fitness for duty was not in question in 1996, he was not referred to the Disability Evaluation System. *Id.* at AR 154–55.

The Board further stated that the recent 2000 determination that he was "not physically qualified (NPQ) for service in the Naval Reserve ha[d] no bearing on the issue of [his] fitness [for] duty in 1996." *Id.* at AR 155. Indeed, the Board stated that "[t]he NPQ finding was perplexing" given plaintiff's statement that his condition had not changed since he was released from active duty. *Id.* The Board denied his application, finding that "the evidence submitted was insufficient to establish the existence of probable material error or injustice." *Id.* at AR 154.

### B.    Request #2:  First Request for Reconsideration of the 1999 Application

Plaintiff requested reconsideration of the Board's decision in August 2001. Memorandum from William Havens to Board (Aug. 2001), AR 148–52. In support of his request, Havens submitted the June 2, 2000 letter from his commanding officer stating he had been placed in a not physically qualified status because of psoriatic arthritis, Lowder June 2000 Mem., AR 149, and the PEB decision of July 19, 2001 that found him "Unfit" and "Not Physically Qualified to Continue Reserve Status" due to psoriatic arthritis which "may be permanent" but "not a proximate result of performing military duty." PEB Findings (July 19, 2001), AR 150.

On August 20, 2001, the Board rejected plaintiff's request for reconsideration because it found that plaintiff had submitted no new material evidence but instead simply cited to inapplicable Department of Defense ("DOD") instructions. Letter from W. Dean Pfeiffer, Exec. Dir., Board to William Havens (Aug. 20, 2001) ("Second Denial"), AR 147. The Board explained

9

that the instructions did not apply for two reasons.  First, it held that any member not on active duty, who was considered fit to continue naval service at the time of separation from active duty, was not entitled to disability retirement as the result "of an increase in impairment occurring while the member was not entitled to basic pay."  *Id.*, citing Instruction 1850.4D § 2038b.  Second, the Board stated that although "[i]t appears that your conditions were incurred while you were on extended active duty prior to your transfer to the Naval Reserve, . . . you have not alleged that your conditions became more severe while you were entitled to basic pay following your release from active duty in 1996," so further review was not warranted.  *Id.*

## C. Request #3: Second Request for Reconsideration of the 1999 Application

Havens then submitted a second request for reconsideration.[5]   Pl.'s Req. for Reconsideration, AR 137–45.  This request included a letter dated September 26, 2001 from Dr. Craig, the physician who first diagnosed plaintiff in 1996 with psoriatic arthritis and found him qualified for duty.  Letter from Dr. Kevin Craig to Dep't of the Navy (Sept. 26, 2001) ("Craig Letter"), AR 139.  Dr. Craig stated that plaintiff asked him to "comment on his being found not physically qualified for duty due to his diagnosis of psoriatic arthritis."  *Id.*  Dr. Craig reviewed plaintiff's medical record as of 2001 and found "no evidence that his disease ha[d] significantly progressed" since the 1996 diagnosis, and concluded that plaintiff's condition was stable and had "not manifestly changed."  *Id.* ("I feel that at the time of his physical exam on 21 Oct 00 he was manifesting an exacerbation of his disease, which is both typical and expected of this disease, and is not representative of a worsening of his arthritis.  The natural course of exacerbation and regression of symptoms in individuals with psoriatic arthritis was known at the time of his

---

5    It is unclear when plaintiff submitted this request, but it appears to have been sometime after September 26, 2001, given that it attaches a letter with that date.

separation in 1996 . . . . ").  Dr. Craig stated that if plaintiff was not physically qualified at that time in 2001, he should have been found unfit for duty in 1996, and alternatively, if plaintiff was fit for duty back in 1996, "he should be found physically qualified now."  *Id.*  Based on all of those circumstances, he concluded that plaintiff's "status in the reserves should be adjudicated under active duty provisions only."  *Id.*

The Board considered the new letter from Dr. Craig, but it denied plaintiff's second request for reconsideration on October 29, 2001, explaining that although plaintiff had provided new material, "it does not tend to prove that [] you were unfit to perform the duties of your office, grade, rank or rating prior [to] your release from active duty on 1 September 1996."  Letter from W. Dean Pfeiffer, Exec. Dir., Board to William Havens (Oct. 29, 2001) ("Third Denial"), AR 136. It concluded:

> Although psoriatic arthritis can be a serious disease process, it was manifested in your case by fatigue, reduced exercise tolerance, and pain in a finger and two toes, which did not preclude you from performing your duties.
>
> It does not appear that you would have qualified for disability separation or retirement even if Dr. Craig had initiated a medical board in 1996, which he now believes he should have done at the time.  As you were pending mandatory separation from the Navy because of your non-selection for promotion, you would have been subjected to the presumption of fitness outlined in SECNAVINST 1850.4C, paragraph 2506. . . . [A]s your condition was not grave, it is extremely unlikely that the presumption would have been successfully rebutted.

*Id.*  Therefore, the Board found that none of the information plaintiff provided was material to its prior decisions, and it denied his request for reconsideration.

### D.   Request #4:   Third Request for Reconsideration of the 1999 Application/2002 Request for a Disability Rating

On January 22, 2002, plaintiff filed a "Request for Disability Rating" with the Board, in which he stated:

> My conditions where [sic] diagnosed and treated during my final two years of active duty starting in 1995 until my discharge from active duty 1 September 1996. . . . My conditions did not become more severe since my separation from active duty . . . as noted by the same doctor who had treated me in 1995/96 and conducted my active duty separation physical.

Memorandum from William Havens to Board (Jan. 22, 2002) ("Fourth Request"), AR 123–24, at AR 124.

The Board, which treated the request as another request for reconsideration, denied it on May 22, 2002. Letter from W. Dean Pfeiffer, Exec. Dir., Board to William Havens (May 22, 2002) ("Fourth Denial"), AR 120. It cited its prior decisions regarding the same issues and explained that the information plaintiff provided with the current application, although new, was not material. *Id.*

### E.   Request #5:  2005 Application to Correct Military Record

On February 23, 2005, plaintiff filed another application for correction of his military record. Application for Correction of Military Record (Feb. 23, 2005) ("Fifth Request"), AR 24–69. This time, plaintiff challenged his 2002 retirement, as opposed to the 1996 transfer to non-active duty. *Id.* at AR 24. He argued that because his psoriatic arthritis developed while he was on active duty in 1995, he was "retired by reason of physical disability on 1 Mar 2002 with a proximate finding which should have been a line of duty finding." *Id.*

In response to this request, the Board asked the Secretary of the CORB to provide comments and a recommendation on plaintiff's application. Memorandum from James R. Exnicios, Chairman, Board to Dir., Sec'y of the Navy CORB (Mar. 8, 2006), AR 102.

### 1.   The CORB's First Advisory Opinion

The CORB reviewed Havens's case history, and on March 22, 2006, it provided a five-page advisory opinion and recommendation. CORB First Adv. Op., AR 97–101. The CORB found that Havens "develop[ed] manifestations of Psoriasis with Psoriatic Arthritis while on

[active duty] in about 1995" and then "develop[ed] an exacerbation of his Psoriasis during subsequent Reserve duty, ultimately, resulting in referral to the PEB, which, by the 19 July 2001 finding of the IPEB, determined that Petitioner's condition rendered him [not physically qualified for duty]." *Id.* at AR 100.  According to the CORB, plaintiff, who was on non-active duty status, should have been evaluated in July 2001 under the active duty standard – fit/unfit instead of physically qualified/not physically qualified – because his condition first developed while he was on active duty and possibly became exacerbated while he was on subsequent reserve duty. *Id.* at AR 100–01.

Under this standard, though, the CORB found Havens fit for duty:

> In the absence of evidence of significant impairment of [active duty] performance from Service Records, Medical Records, or additional VA evidence, Petitioner would appear to have been Fit for Continued Naval Reserve Service at the time of this 1 March 2002 discharge.

*Id.* at AR 100–01 (stating that his medically-related impairment for continued reserve duty was largely limited to restrictions on "PRT performance"[6] and limits on worldwide deployability).

The CORB recommended that Havens's record should be amended from showing that he was found "not physically qualified" to reflect that he was "fit" for service. *See id.* at AR 101.  In making this recommendation, the CORB noted that "Military PEB determinations are performance based requiring evidence that a given medical condition renders a service member Unfit while VA Rating Decisions are largely based on the manifestations of medical conditions without a requirement that such render the veteran Unfit for Continued Service." *Id.*

## 2.   Plaintiff's Response to the CORB's First Advisory Opinion

On April 27, 2006, plaintiff, through newly-retained counsel, filed a response to the CORB's advisory opinion.  Memorandum from William J. Holmes to James R. Exnicios, Board,

---

6     PRT refers to physical readiness test. *See* Pl.'s Opp. at 2.

AR 88–90.  Plaintiff argued that the CORB correctly found that in July 2001, the PEB made the wrong type of determination and utilized the wrong standard.  *Id.* at AR 88.  However, plaintiff disputed the conclusion that under that standard, the medical records established that he was "fit" for service.  *See id.* at AR 90.  He asked the Board to find that he was "unfit" because of his medical condition and to change the reason for his retirement to retirement by reason of medical disability. *See id.*

### 3.      The CORB's Second Advisory Opinion in Reply

On June 8, 2006, the CORB sent the Board a second opinion in reply to plaintiff's submission.  Memorandum from M.L. Culver, Dir., Sec'y of Navy CORB to Exec. Dir., Board (Jun. 8, 2006) ("CORB Second Adv. Op."), AR 87.  The CORB restated its opinion that the July 2001 PEB should have used the "Fit/Unfit" standard because "having provided [plaintiff] the benefit of the doubt," the CORB found that "his condition . . . was incurred while on active duty, [and] was possibly aggravated while in a reserve status."  *Id.*, citing DOD Instruction 1332.38 §§ E.3.P4.3, E3.P4.5.3.  The CORB went on:

> [A]lthough petitioner was entitled to a Fit/Unfit determination, a preponderance of the evidence clearly shows that his condition, although possibly aggravated, *was not an unfitting condition at the time of his release from active duty* or during his subsequent reserve period of service. . . . [T]he mere presence of a condition does not render an individual unfit for duty.  *There must also be a showing that he is unable to perform duties appropriate for his office, grade, rank, or rating*.  Such a finding could not be made in petitioner's case. . . . In conclusion, [plaintiff's] request for disability retirement is not supported.

*Id.* at AR 87 (emphasis added).

### 4.      The Board's Decision

On August 4, 2006, after considering plaintiff's application and supporting material, the applicable policies and regulations, the CORB advisory opinions, and plaintiff's response, the Board denied plaintiff's application.  Letter from W. Dean Pfeiffer, Exec. Dir., Board to William

Havens (Aug. 4, 2006) ("Fifth Denial"), AR 4–5.  The Board stated that it "substantially concurred with the comments contained in the advisory opinions," except that it was "not persuaded that the condition in question recurred during, or was aggravated by, [plaintiff's] service in the Naval Reserve," and therefore it rejected the CORB's opinion that in 2001, plaintiff should have been evaluated under the fit/unfit standard.  *Id.* at AR 4.  Further, the Board concluded that even if it had determined plaintiff should have been found "unfit" for duty in 2001, the severity of his disability would not have qualified him for retirement by reason of physical disability.  *See id.* at AR 5.  Therefore, the Board found that "the evidence submitted was insufficient to establish the existence of probable material error or injustice."  *Id.* at AR 4.

### F.    Request #6:  First Request for Reconsideration of 2005 Application for Correction

Plaintiff applied for reconsideration of the Board's denial.[7]  *See* Letter of W. Dean Pfeiffer, Exec. Dir., Board to William Havens, Apr. 9, 2007 ("Sixth Denial"), AR 1–2.  On April 9, 2007, the Board denied this request.  *See id.* (explaining that plaintiff had not submitted any new or material evidence that would justify the Board reconsidering its prior finding).

## IV.    Plaintiff's Judicial Challenges

In November 2007, following his administrative appeals, plaintiff filed suit in the United States Court of Federal Claims.  *Havens v. United States*, No. 07-780 C (Fed. Cl. Mar. 13, 2008).  That court dismissed his lawsuit, ruling that his claims were time-barred because the applicable statute of limitations began running with plaintiff's release from active duty in 1996 and was not tolled during his appeals to the Board.  *Id.*  The U.S. Court of Appeals for the Federal Circuit affirmed the lower court's ruling.  *Havens v. United States*, 330 Fed. Appx. 920 (Fed. Cir. 2009), cert. denied, 559 U.S. 992 (2010).

---

7       There does not appear to be a copy of this request in the administrative record.

Plaintiff filed his action in this court on November 1, 2010, Compl. [Dkt. # 1], and he amended his complaint on January 5, 2012.  Am. Compl.  The amended complaint contains no enumerated causes of action but asserts generally that defendant acted arbitrarily and capriciously, and in violation of the Constitution and the APA by failing to correct his record.  *Id.* ¶¶ XCVIII. Plaintiff sought an order directing defendant to correct his records "to reflect that he should have been medically retired to a date as determined by this court."  *Id.* ¶ CVIII.

On September 26, 2012, this Court granted defendant's motion to dismiss on the grounds that plaintiff's claims were barred under res judicata based on the earlier decision of the Court of Federal Claims.  *Havens v. Mabus*, 892 F. Supp. 2d 303, 305–06 (D.D.C. 2012).

On appeal, the U.S. Court of Appeals for the D.C. Circuit reversed the dismissal.  *Havens*, 759 F.3d at 92 (holding that the decision in the Federal Circuit was not on the merits so res judicata did not apply).  It affirmed the dismissal of plaintiff's claims challenging the Board's four pre-2006 decisions as barred by the APA's six-year statute of limitations and remanded the two later-filed requests – the 2005 request for a correction and request for reconsideration – because the APA statute of limitations had not yet run.  *Id.* at 97–100.  The Court of Appeals remanded the case to this Court for further proceedings consistent with its opinion.  *Id.* at 100.

Pending before the Court, then, are plaintiff's challenges to the Board's August 4, 2006 and April 9, 2007 decisions, both of which denied his application for correction of his military

record.[8]  The Secretary has moved for summary judgment on the grounds that the Board followed

the applicable procedures in issuing the two decisions, that the decisions were constitutionally

sound, and that they are correct, supported by the administrative record, and not arbitrary,

capricious, or contrary to law.  *See* Def.'s Mem. at 13–18; *see also* Def.'s Opp. and Reply [Dkt.

# 39].  Plaintiff has moved for summary judgment on the grounds that the Board was wrong when

it decided in 2006 that he had been evaluated under the correct standard in 2001 and properly

transferred to the retired reserve in 2002, and that he received ineffective assistance of counsel

before the PEB.[9]  *See* Pl.'s Mot. for Summ. J. [Dkt. # 36]; Pl.'s Opp. at 17–25; Pl.'s Reply [Dkt.

# 42].

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence show that "there is

no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  However, in cases involving review of agency action

under the Administrative Procedure Act, Rule 56 does not apply due to the limited role of a court

---

8       The Secretary considers plaintiff's 2005 application to be another request for
reconsideration of the Board's earlier decisions, *see, e.g.,* Def.'s Mem. at 1, Def.'s Reply at 15,
but the D.C. Circuit found otherwise.  *Havens*, 759 F.3d at 95 n.9 (finding that the request was a
new application because it did not mention "reconsideration" or the "new and material evidence"
standard, the decision reached the merits of Havens's application, and the Board previously
advised Havens that if he were to submit a request for correction of his record to show that he was
retired by reason of physical disability on March 1, 2002, the Board would treat it as a new
application).

9       Although plaintiff asserted in the amended complaint that the Board's decisions violated
the Constitution, Am. Compl. ¶¶ XCVIII, on remand, he does not argue that the fifth and sixth
denials were deficient under the Constitution.  Accordingly, the Court treats these claims as
conceded by the plaintiff.  *See Lewis v. District of Columbia,* No. 10–5275, 2011 WL 321711, at
*1 (D.C. Cir. Feb. 2, 2011) (per curiam) (citation omitted) ("It is well understood in this Circuit
that when a plaintiff files an opposition to a dispositive motion and addresses only certain
arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to
address as conceded.").

in reviewing the administrative record.  *Select Specialty Hosp.-Akron, LLC v. Sebelius,* 820 F.

Supp. 2d 13, 21 (D.D.C. 2011).   Under the APA, the agency's role is to resolve factual issues

and arrive at a decision that is supported by the administrative record, and the court's role is to

"determine whether or not as a matter of law the evidence in the administrative record

permitted the agency to make the decision it did."   *Occidental Eng'g Co. v. INS*, 753 F.2d 766,

769–70 (9th Cir. 1985), citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402,

415 (1971); *see also Richards v. INS*, 554 F.2d 1173, 1177 (D.C. Cir. 1977).

Under the APA, a court must "hold unlawful and set aside agency action, findings, and

conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or

"without observance of procedure required by law," *id.* § 706(2)(D).   However, the scope of

review is narrow.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983).  The agency's decision is presumed to be valid, *see Citizens to Preserve*

*Overton Park*, 401 U.S. at 415, and a court must not "substitute its judgment for that of the

agency."  *State Farm*, 463 U.S. at 43.

Further, Board decisions receive additional deference because Congress has given the

Secretary of the Navy, acting through the Board, wide discretion in deciding when to make

corrections to military records.   *See* 10 U.S.C. § 1552(a)(1) ("The Secretary of a military

department may correct any military record of the Secretary's department *when the Secretary*

*considers it necessary* to correct an error or remove an injustice. . . . [S]uch corrections shall be

made by the Secretary acting through boards of civilians of the executive part of that military

department.") (emphasis added).   In the case of Board decisions, the Court must apply "'an

unusually deferential application of the arbitrary or capricious standard' of the APA."  *Piersall v.*

*Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006), quoting *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514.  "In fact, the Navy need only show that the [Board]'s decision contains a 'rational connection between the facts found and the choice made.'"  *Gillan v. Winter*, 474 F.3d 813, 819 (D.C. Cir. 2007), citing *State Farm*, 463 U.S. at 43.[10]

Courts must consider whether the Board's "decision making process was deficient, not whether [the] decision was correct."  *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995), quoting *Kreis*, 866 F.2d at 1511.  But actions by military correction boards "must be supported by reasoned decisionmaking.  If the Board's explanation for its determination lacks any coherence, the court owes no deference to the Board's purported expertise because we cannot discern it."  *Haselwander v. McHugh,* 774 F.3d 990, 996 (D.C. Cir. 2014) (internal citations, alternations, and quotation marks omitted) ("When a military records correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its statutory mandate under 10 U.S.C. § 1552.  And such a violation, contrary to the evidence, is arbitrary and capricious.").

## ANALYSIS

The Secretary of the Navy, acting through the Board, "may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice."  *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014), quoting 10 U.S.C. § 1552(a)(1).  The applicant seeking to correct a record must provide "substantial evidence" to overcome the presumption that

---

10     Plaintiff argues that this deference to Board determinations is "lessened when . . . the policies in question are not operational, strategic or tactical, and the mere fact of military context is insufficient to require deference."  Pl.'s Opp. at 10, citing *Adair v. England*, 183 F. Supp. 2d 31, 50 (D.D.C. 2002).  But the case plaintiff cites involved constitutional challenges under the First Amendment by military chaplains, and the holding concerns whether strict scrutiny or a more deferential level of scrutiny applies to Establishment Clause claims in the military context.  *Adair* at 50–51; *see also Foster v. Mabus*, No. 11–1931 (BAH), 2015 WL 2198851, at *11 n.8 (D.D.C. May 12, 2015) (stating that *Adair* was inapposite in that case, which did not involve claims under the First Amendment).  Accordingly, plaintiff's reliance on *Adair* is misplaced.

"'public officers,' including military officers, 'have properly discharged their official duties.'"  *Id.*, quoting 32 C.F.R. § 723.3(e)(2).  "The Board may deny an application 'if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice.'"  *Id.*, quoting 32 C.F.R. § 723.3(e)(2).

Havens challenges the Board's denial of his fifth request for correction and the denial of this request for reconsideration of that decision on the grounds that:  (1) the Board failed to explain its reasoning, (2) the Board wrongly concluded that Havens was evaluated under the correct standard, (3) the Board was wrong in finding that Havens was properly transferred to the retired reserve, and (4) plaintiff did not have the effective assistance of counsel before the PEB.  None of these contentions warrant the reversal of the Secretary's discretionary determination.

## I.  The Board's reference to the advisory opinions of the CORB in making its determination was proper.

Havens argues that the Board's decision making process was improper because the Board did not explain its reasoning.  *See* Pl.'s Opp. at 13–22.  He contends that the Board provided no "reasoned analysis that could be measured against the arbitrary and capricious standard" but "merely parroted the advisory opinion" without more.  Pl.'s Opp. at 15–16, citing *Dickson*, 68 F.3d at 1405.

But the Board may rely on advisory opinions, like the ones provided by the CORB here, when making determinations.  *Roberts v. United States*, 741 F.3d at 158–59, quoting *Envtl. Def. Fund, Inc. v. EPA*, 465 F.2d 528, 537 (D.C. Cir. 1972) (holding that in providing a reasoned explanation of its decisions, the Board "may meet that obligation by referring the reader to 'clearly relevant sources other than a formal statement of reasons'").  And here, the Board's decisions referred not only to the CORB's advisory opinions but also to the rest of the record, with its many repeated reviews of the same set of medical information, and all of that material is clearly relevant

to this matter.   Moreover, it can hardly be said that the Board "parroted" the CORB advisory opinion when the Board actually rejected the advisory body's conclusion that the fit/unfit standard should apply even though it arrived at the same conclusion.   Fifth Denial at AR 4.   Accordingly, the Board's decision making process is not flawed merely because the Board referenced the CORB's advisory opinions rather than providing another detailed explanation of its own in deciding plaintiff's application.

## II.   The Board's conclusion that Havens was evaluated under the correct standard was based on reasoned decision making and did not lack coherence.

Havens challenges the Board's decision that he was properly evaluated in 2001 under the physically qualified/not physically qualified standard.   Pl.'s Opp. at 17–19.   He argues that the Board failed to "address the basis of [its] disagreement [with the CORB] and, at least to some extent, explain it," and that the finding was "legally and factually incorrect."   *Id.* at 18.   But as explained below, the Board did explain the basis of its disagreement.   And whether the decision was correct on the merits is not the question before the Court.   *Dickson*, 68 F.3d at 1405–06. Rather, the issue to be decided is whether the Board's decision making process was deficient, *id.*, or lacked any coherence.   *Haselwander,* 774 F.3d at 996.   Because the Court could discern the Board's decision making process and the record supports the decision, the Court holds that the decision was supported by reasoned decision making and did not lack coherence.

The CORB reviewed Havens's history and concluded that he should have been evaluated under the fit/unfit standard in 2001 even though he was on non-active duty at the time because his condition was incurred while he was on active duty, and in the CORB's opinion, the condition was exacerbated while on reserve duty.   CORB First Adv. Op., AR 97–101.   The CORB stated that the fit/unfit standard applied because the PEB may:

issue a Fit/Unfit determination when it can be established by the evidence of record that the member (who was previously on active duty either as a recalled reservist or active duty member) incurred a condition while on the previous period of active duty, that the condition was *actually unfitting at the time of the member's release from active duty, or, that although not unfitting upon release, the condition was aggravated while on a subsequent reserve or active period of duty.*

CORB Second Adv. Op., AR 87 (emphasis added), citing DOD Instruction 1332.38[11] §§ E3.P4.3, E3.P4.5.3.

The provisions cited by the CORB govern the standards that apply when evaluating a service member's physical disability. Section E3.P4.3 states that a reserve member "shall be adjudicated under the statutory provisions applicable to his or her duty status at the time of onset or aggravation of the condition for which the member is determined unfit." DOD Instruction 1332.38 § E3.P4.3. And Section E3.P4.5.3 provides for the evaluation of prior service impairments. *See id.* § E3.P4.5.3 (stating that a "medical condition incurred or aggravated during one period of service or authorized training in any of the Armed Forces that recurs or is aggravated during later service or authorized training, regardless of the time between, should normally be considered incurred in the line of duty"). In other words, under these regulations, the determination of whether a member is to be evaluated under the active duty (fit/unfit) standard or the non-active duty (physically qualified/not physically qualified) standard depends upon when the condition was incurred or aggravated: while the service member was on active duty or on non-active duty. *Id.* § E3.P4.3. If a condition incurred or aggravated during one period of active duty or training recurs or is aggravated during a later period of active duty or training of 30 days or more, the

---

[11]    This instruction governs the military's physical disability evaluations. DOD Instruction 1332.38 (1996).

condition is considered incurred or aggravated in the line of duty (i.e., while on active duty), even though there was an intervening period of non-active duty.  *Id.* §§ E3.P4.3, E3.P4.5.3.

The CORB opined that plaintiff should have been evaluated under the fit/unfit standard for active duty members because it found that "his condition, which was incurred while on active duty, was *possibly* aggravated while in a reserve status."  CORB Second Adv. Op., AR 87 (emphasis added).  Importantly, it explained that it made this finding because it "provided [Havens] the benefit of the doubt" on this issue.  *Id.*

The Board disagreed, explaining that:  "it was not persuaded that the condition in question recurred during, or was aggravated by, [Havens's] service" after his release from active duty.  Fifth Denial at AR 4.  It is clear the Board did not give plaintiff the same "benefit of the doubt," and the Court is able to discern the Board's decision making process.

Further, the Court finds a rational connection between the facts in the record and the Board's finding that plaintiff's condition did not recur or become aggravated.  *Gillan*, 474 F.3d at 819.  The record presents evidence that can be interpreted to show that plaintiff's condition was stable throughout the relevant period.

- Havens was consistently found physically qualified for duties as a non-active reservist from 1997 to 2000, *see* Pl.'s June 2, 2005 Letter at AR 19, and he was found physically qualified as late as June 13, 2001.  CORB First Adv. Op. at AR 98.

- As of March 2001, his condition "had not required time away from duties for treatment/evaluation/recuperation."  CORB First Adv. Op. at AR 98

- Havens wrote in his 2005 application that his physical disability "did not become aggravated or more severe while in a non-duty status."  Fifth Request at AR 24.

- Dr. Craig, whose opinion was proffered by plaintiff himself, was of the view that plaintiff's condition was the same in 1996 and in 2001, and that while his symptoms may have waxed and waned, his arthritis had not worsened.  *See* Craig Letter, AR 139.

While the CORB gave plaintiff the "benefit of the doubt" that other evidence showed his condition was aggravated while he was on reserve duty,[12] the Board concluded otherwise – which meant that he was properly evaluated under the standard for non-active duty reservists in 2001. DOD Instruction 1332.38 § E3.P4.3; *see also* Instruction 1850.4D § 3309 (requiring a fit/unfit determination for a reservist who incurs or aggravates a condition while recalled to active duty for 30 days or more).  Given the record evidence and the Board's explanation, the Court holds that the Board's decision on the issue was supported by the record, and it will not second-guess the Board's weighing of the competing evidence.  *State Farm*, 463 U.S. at 43 (holding that a court must not "substitute its judgment for that of the agency").[13]

The Board's decision and plaintiff's argument on this issue are like two ships passing in the night.  Plaintiff argues that "the salient point" is not whether his condition *recurred* after he was released from active duty but that it was *incurred* while he was on active duty.  Pl.'s Reply at 2–3, citing Instruction 1850.4D §§ 2019, 2072, 3309b, 3409, and Report of Medical History (Sept. 9, 1996), AR 166; *see also* Pl.'s Reply at 5.  But the fact that plaintiff's condition was incurred while on active duty – which is undisputed, *see* CORB First Adv. Op. at AR 100; First Denial at AR 154 – did not necessarily entitle him to a fit/unfit determination in 2001.

---

[12]    *See* Memorandum from Commanding Officer, Naval Air Reserve Cetner, San Jose to President, PEB (Jul. 7, 2001), AR 111 (reporting on July 7, 2001 that Havens complained "that his arthritis causes pain, prevents him from standing for moderate periods of time and that he has great difficulty descending stairs"); CORB First Adv. Op. at AR 100 ("Beginning in May 2001, he developed worsening right ankle pain [and] . . . continues to have difficulty with ambulation.").

[13]    Plaintiff also argues that the Board's 2007 denial of his request for reconsideration, the sixth denial, was flawed because the Board "merely mentioned their disagreement" on the applicable evaluation standard.  Pl.'s Opp. at 18, citing 2007 Sixth Denial at AR 1.  But that denial was properly based on the fact that plaintiff had not submitted any new material evidence. 32 C.F.R. § 723.9 ("After final adjudication, further consideration will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the Board.").

The provisions plaintiff cites require a service member to be adjudicated under the provisions applicable when a condition begins, or is aggravated, and they provide for a reservist to be evaluated under the active duty standard if his condition recurs or is aggravated while recalled to active duty for 30 days or more. *See* Instruction 1850.4D §§ 2019, 2072, 3309b, 3409. Havens was evaluated in 1996 while he was still on active duty, under the fit/unfit standard applicable to active duty members, Instruction 1850.4D § 4211a, and was found fit for active duty. CORB First Adv. Op. at AR 97. He was evaluated again in 2001, when he was on non-active duty status, under the physically qualified/not physically qualified standard applicable to non-active duty members, Instruction 1850.4D § 2054, 4211b, and found to be not physically qualified. CORB First Adv. Op. at AR 98. Because his condition did not render him unfit for active duty when he was released from active duty and because – unlike the CORB – the Board found that plaintiff's condition was not aggravated during a subsequent reserve or active period of duty, the Board did not err in determining that an evaluation under the fit/unfit standard was not required in 2001. *Id.*

It is important to point out that even if one were to conclude that the CORB's application of the regulations was superior and that the Board's decision on which standard should apply was comparatively lacking in coherence and support, that conclusion would not lead to the outcome plaintiff is seeking: an order that his Naval records should be corrected. While the CORB embraced plaintiff's theory that the fit/unfit standard was the proper test, it rejected plaintiff's contention that he was unfit even after it gave him the "benefit of the doubt." So there is no reviewing body that looked at the medical evidence and came to a conclusion in plaintiff's favor, and there was little to persuade the Board that there was a manifest injustice to correct.

III.     **The Board's conclusion that Havens was properly transferred to the retired reserve was based on reasoned decision making and did not lack coherence.**

The Board also concluded that even if the PEB had found Havens unfit for duty in 2001, he would not have qualified for retirement by reason of physical disability in any event.  Fifth Denial at AR 5.

A.     **The Board did not usurp the role of the PEB.**

Havens argues that the Board wrongly usurped the role of the PEB when it made this observation, arguing that only PEBs are authorized to make fitness determinations.  Pl.'s Opp. at 19–20.  This argument misconstrues both the Board's decision and its role in deciding plaintiff's application.  The Board did not find that plaintiff was fit for duty.  It found that he would not have met the criteria for disability retirement.  Fifth Denial at AR 5 ("[E]ven if the PEB had determined that you were unfit for duty, you would not have met the criteria for a disability rating of 30% or higher and, therefore, would have been entitled to retirement by reason of physical disability.").

The Board's role is to review "[e]ach application . . . and all pertinent evidence of record" to determine "the existence of probable material error or injustice."  32 C.F.R. §§ 723.3(e)(1)–(2). In doing that, the Board did not substitute its judgment for that of the PEB.  Rather, it reviewed the record evidence to decide whether probable material error or injustice occurred when Havens was found not physically qualified for duty and retired from service in 2001.  Exercising this function as required by regulation does not constitute a usurpation of the role of the PEB.

B.     **The Board's conclusion that Havens would not qualify for retirement by physical disability was based on reasoned decision making and did not lack coherence.**

Plaintiff also argues that the Board was wrong in its conclusion.  The Board found that even if plaintiff had been evaluated under the fit/unfit standard, he "would not have met the criteria for a disability rating of 30% or higher" and thus would not have been entitled to retirement

26

because of physical disability.  Fifth Denial at AR 5.  Havens challenges this conclusion by asking: "If Plaintiff was fit for duty during his Reserve Service how could he be found not physically qualified?"[14]  Pl.'s Opp. at 21 (arguing that the "only difference between the two findings is that the not physically qualified finding applies to a non-duty related disease or injury").  Plaintiff's argument misses the basis of the Board's decision.  In this ruling, the Board did not determine whether plaintiff was fit or unfit,[15] but it reasoned that he would not have satisfied the statutory requirements to receive disability retirement.

To receive disability retirement, a non-active duty reservist like plaintiff must have a physical disability rated "at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination."  10 U.S.C. § 1204(4)(B).  Given the evidence that:  for four years after he was released from active duty, plaintiff was found qualified for his duties as a non-active reservist (Pl.'s June 2, 2005 Letter at AR 19); as of March 2001, plaintiff had not incurred time away from his duties due to his condition (CORB First Adv. Op. at AR 98); in 2005, plaintiff himself observed that his physical disability

---

14      Plaintiff repeatedly asserts in his pleadings that he was found "fit" for duty in June 2001 by the PEB but does not cite record evidence for this assertion.  *See* Am Compl. ¶ LXVI; Pl.'s Opp. at 4–5.  The record shows that an informal PEB found plaintiff "physically qualified" on June 13, 2001, not "fit for duty."  CORB First Adv. Op. at AR 98.

15      The crux of plaintiff's argument is that his condition did not change between 1996 and 2001, so he could not be found fit in 1996 but found not physically qualified in 2001.  Although the Board did not determine whether plaintiff was fit or not and its decision did not turn on such a finding, the Court notes that the two standards are not identical and must be considered in the context of a service member's duties.  *See* Instruction 1850.4D § 2032 (providing that in making fit/unfit findings, "the mere presence of a diagnosis is not synonymous with a disability" and "[i]t must be established that the medical disease or condition underlying the diagnosis actually interferes *significantly* with the member's ability to carry out the duties of his or her office, grade, rank or rating") (emphasis added); *id.* § 2054 (providing that not physically qualified means a reservist is unable "to *reasonably* fulfill the purpose of his or her reserve employment") (emphasis added).

"did not become aggravated or more severe while in a non-duty status" (Fifth Request at AR 24); and individuals with psoriatic arthritis typically experience a "natural course of exacerbation and regression of symptoms" (Craig Letter, AR 139), the Court cannot find the Board's decision that plaintiff would not have met the thirty percent statutory rating requirement to be unreasoned or lacking coherence.  Again, the Board's role is to review plaintiff's application and the record to determine "the existence of probable material error or injustice."  32 C.F.R. §§ 723.3(e)(1)–(2).  In doing so, it applies a presumption that military officers "have properly discharged their official duties."  *Id.* § 723.3(e)(2).  And the Court's role is to defer to that decision unless there is a lack of reasoning behind it.  The Court finds that the Board's conclusion on this issue is not arbitrary, capricious, or contrary to law.

## IV.    Plaintiff's claim that he had ineffective counsel in 2001 is beyond the scope of the Court's review and is time-barred.

Finally, plaintiff argues that he received ineffective assistance of counsel before the PEB in 2001, and he suggests this was a violation of his Fifth Amendment due process rights.  Am. Compl. ¶ LXXIV; Pl.'s Opp. at 22–25.  Plaintiff's claim fails because it is both beyond the scope of the Court's review and time-barred under the APA.

The Court's review under the APA includes only the administrative record absent a "strong showing of bad faith or improper behavior."  *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010), quoting *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998).  Plaintiff does not claim bad faith or improper behavior (and there is no indication of either), so the Court's review is limited to the administrative record in this case.  Because plaintiff "never argued ineffective assistance of counsel" to the Board, and he asserted the claim for the first time in his complaint, this argument must be dismissed.  *See Caez v. United States*, 815 F. Supp. 2d 184, 190 (D.D.C. 2011) (dismissing a plaintiff's ineffective

assistance of counsel claim in a case challenging the decision of the Army Board for Correction of Military Records because it was not raised in the administrative appeals process).

But even if this Court could review plaintiff's allegations, the claims would be time-barred under the APA's limitations period.  Under the APA, civil actions against the government must be filed "within six years after the right of action first accrues."  *See* 28 U.S.C. § 2401(a) (2012). Plaintiff's claims of ineffective assistance of counsel and denial of due process refer to his representation by Lieutenant Kim Black in 2001, rendering these claims far beyond the six-year limitations period when plaintiff filed this lawsuit in 2010.[16]  *See Havens*, 759 F.3d at 97 n.11 (affirming dismissal of plaintiff's claims relating to Board decisions issued between 2000 and 2002 because they "had plainly expired by the time Havens filed suit in 2010").

## CONCLUSION

For the reasons stated above, the Court will grant defendant's motion for summary judgment [Dkt. # 33] and deny plaintiff's cross-motion for summary judgment [Dkt. # 36].

*Amy B Jack*
_____

AMY BERMAN JACKSON
United States District Judge

DATE:  November 25, 2015

---

16    The Court notes that when a plaintiff challenges an adverse decision by a corrections board, the right of action first "accrues at the time of the final agency decision."  *Rempfer v. U.S. Dep't of Air Force Bd. for Corr. of Military Records*, 538 F. Supp. 2d 200, 206 (D.D.C. 2008), quoting *Lebrun v. England*, 212 F. Supp. 2d 5, 11 (D.D.C. 2002).  Plaintiff's ineffective assistance of counsel claim, however, challenges his underlying representation by Lieutenant Kim Black, not an agency decision, which concluded more than six years ago and falls beyond the limitations period. Pl.'s Opp. at 22–25; *see Rempfer* at 206–07 (explaining that a claim challenging an adverse corrections board decision accrues after the final agency decision, but a claim challenging the plaintiff's underlying discharge accrues when the service member's discharge is final).